**People of the State of Illinois, Plaintiff-Appellee, v. Joseph Grieco (Impleaded), Defendant-Appellant.**

**Gen. No. 51,048.**

First District, Third Division.

December 5, 1968.

Rehearing denied January 10, 1969.

Bellows, Bellows & Magidson, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Anthony J. Onesto, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

The appellant Joseph Grieco, together with his brother Donald Grieco, was indicted for the crimes of aggravated battery and battery. They were tried by the court and found guilty on the battery count. The court fined defendant Joseph Grieco $500 and sentenced him to serve six months in the Cook County Jail. The codefendant Donald Grieco was placed under the supervision of the court for a period of two years. That appears to be a method by which the court retains jurisdiction for the purpose of observing the conduct of a defendant over a period of time before imposing a sentence.

In this appeal Joseph Grieco contends that the indictment failed to inform him of the nature of the charges against him, that it failed to charge an offense and that evidence was erroneously admitted of a threat against the complaining witness and of the transfer of certain money, both events having occurred after the alleged battery. The facts follow.

George Quarnstrom, the complaining witness, testified that in September 1963 he was in financial straits. A fellow employee referred him to the Independent Loan Company at 2015 Larrabee Street in Chicago. Quarnstrom went to a pizza parlor at that address and there was introduced to a man identified as Don Grieco. He applied for a loan and Grieco said he would let him know in a few days whether a loan would be approved. Several days later the loan transaction was completed. The face amount of the loan was $725, but Quarnstrom testified that he received only $475. He was obligated to make 25 weekly installments of $28 each plus a final payment of $25. A collector appeared every week at the Chicago Daily News Building where Quarnstrom was employed and he (Quarnstrom) made the first twelve payments promptly. The thirteenth payment came due on December 4, 1963, and defendant was in default.

On December 6, 1963, Quarnstrom was in Mike's Aragon Tavern at Lawrence Avenue and Broadway in Chicago drinking beer. He testified that Don Grieco and the appellant Joseph Grieco entered the tavern at about 2:30 p. m. and asked to talk to him in the washroom. Donald Grieco stood by the door while Joseph Grieco struck Quarnstrom in the face about nine times and in the chest three or four times. Defendant concluded the meeting by saying, "Get the twenty-eight dollars in, you ———." Quarnstrom testified that following the altercation he bled from the mouth and nose and his face was swollen. The bartender gave him a towel and a drink of liquor, after which he washed his face and went home. Follow-

ing the incident at the tavern he made six more payments on the loan. On one of those occasions Don Grieco came to collect the installment and Quarnstrom asked him, "Why did you have to do this to me? Only one payment behind," to which Grieco replied, "Look, don't get smart. I will throw you right out this window here."

On February 26, 1964, Quarnstrom went to the Chicago Police Department and received $28 which he then paid to a collector named "Al," to whom he had paid some of the previous installments. The serial numbers of the bills had been recorded by the police and the marked money was later found during a search of a prisoner named Albert Si, identified as "Al," who had been arrested at the Grieco office along with the Grieco brothers.

We proceed to consideration of appellant's first contention—that the indictment was so "vague and uncertain" as to deprive him of his right to be apprised of the nature of the charges against him, as provided by the Fifth and Sixth Amendments to the Federal Constitution. Count II of the indictment upon which appellant was convicted recites in pertinent part that the appellant "committed the offense of battery, in that [he] intentionally and knowingly, without legal justification, committed a battery on George Quarnstrom which caused great bodily harm to said George Quarnstrom, in violation of chapter 38, section 12-3, of the Illinois Revised Statutes, 1963. . . ." The indictment describes the offense in virtually the same terms as the language of the statute. Ill Rev Stats, c 38, § 12-3 (1963).

▪ An indictment may properly be phrased in the language of the statute when the statute itself particularizes the offense sufficiently for the defendant to know the precise offense with which he is charged. People v. Sims, 393 Ill 238, 66 NE2d 86; People v. Klemann, 383 Ill 236, 48 NE2d 957. The word "battery" has a common usage apart from its technical use in the Criminal Code. It has been defined as the "act of battering or beating."

111

Webster's New International Dictionary, 2nd ed, unabridged. In common parlance a battery is a beating and a beating is a battery. It does not require subtle language to describe its nature or elements. The charge that the defendant "[c]ommitted a battery on George Quarnstrom which caused great bodily harm to said George Quarnstrom" was sufficient to notify the defendant of the nature of the offense. Had he desired further details, he could have moved for a bill of particulars.

Defendant argues that he was prejudiced by the admission of evidence relating to a threat against the complaining witness. He contends that the threat constituted a separate offense not charged in the indictment and occurring subsequent to the alleged battery. Five days after the alleged battery and outside the presence of the appellant, Donald Grieco threatened to throw Quarnstrom through a window. Appellant argues that this evidence was irrelevant and prejudicial as to him. The defendants were tried together and no objection was made to the joinder. At the beginning of the testimony regarding the threat, counsel objected on behalf of both clients on the sole ground that the threat was made after the alleged battery. Counsel who tried the case did not object specifically on behalf of appellant who was not present when the threat was made nor did he ask the court to disregard the testimony as to Joseph Grieco. The sole objection preserved for review therefore is whether evidence of a subsequent act was properly admitted.

██ ██ Evidence of other crimes is admissible where it shows motive or intent, absence of mistake or accident, or the existence of a common scheme or design. People v. Lehman, 5 Ill2d 337, 125 NE2d 506, citing 1 Wigmore, Evidence, § 216, 3rd ed, 1940. When, as here, the question is whether the defendant's conduct evidenced a plan to commit the charged offense, it was proper to admit evidence of subsequent conduct supporting the charge. Testimony regarding Donald's relationship with Quarn-

strom bears upon Donald's motives and the degree of his participation in the alleged crime and it established a connection between Donald and the loan transaction which led to the beating.

■ ■ Proceeding to the final point, appellant contends that the testimony regarding the transfer of marked money suggested that appellant was guilty of some undefined offense other than the battery and that he was prejudiced by that insinuation. The indictment charged that appellant intentionally and knowingly committed the battery. Existence of the debt and the methods employed to collect it relate to appellant's motive and intent. Quarnstrom testified that he made numerous payments to a collector other than the codefendants and that the marked money showed only that the payments were collected on behalf of the codefendants. All the evidence reveals that failure to keep current with the obligation was the motive for the attack on Quarnstrom. The State may show that a crime was committed pursuant to a conspiracy, even though the indictment does not charge a conspiracy, when that evidence tends to prove the intent, motive or common design to commit the crime charged. People v. Novotny, 371 Ill 58, 20 NE2d 34.

We find no reversible error in the record. The judgment is affirmed.

Judgment affirmed.

DEMPSEY, P. J. and SULLIVAN, J., concur.